667 So.2d 586 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Royce M. REED, Defendant-Appellant.
No. 27868-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1996.
Rehearing Denied February 22, 1996.
*587 William Noland and Gregory K. Voigt, New Orleans, for Appellant.
Richard Ieyoub, Attorney General, Walter E. May, Jr., District Attorney, Douglas L. Stokes, Jr., Asst. District Attorney, for Appellee.
Before MARVIN, HIGHTOWER and WILLIAMS, JJ.
HIGHTOWER, Judge.
A commercial surety company, maintaining that the provisions of LSA-R.S. 15:85(10) have extinguished all of its obligations under a criminal appearance bond, appeals a district court decision refusing to nullify and set aside a forfeiture judgment. We affirm.

FACTS AND PROCEDURAL BACKGROUND
On November 20, 1993, Royce M. Reed and appellant, National American Insurance Company ("National"), entered into a bail bond contract securing Reed's release from jail pending the outcome of charges against him for felony theft exceeding $500.00. See LSA-R.S. 14:67.[1] The executed document indicated that the accused would be required to appear for arraignment on January 4, 1994.
Reed did not appear on that date. As a result, upon the district attorney's request, the trial court signed a judgment of bond forfeiture and issued a bench warrant. Eventually, on February 8, 1994, the defendant came to court and pled "not guilty."[2] The district judge, after upsetting the matter several times, finally ordered that the case be tried on July 7, 1994.
On that date, Reed again failed to appear as ordered. The state then requested a second forfeiture of the surety's bail bond and introduced evidence in support of that motion. Accordingly, the district judge signed an appropriate judgment against Reed and National that same day.
On January 12, 1995, National moved to set aside both the January 4, 1995 and July 7, 1994 judgments of forfeiture. Relying on the provisions of LSA-R.S. 15:85(10), the bail bond company contended that the defendant's appearance, on February 8, 1994, completely extinguished the surety's obligation and, thus, no valid bond existed when the second forfeiture occurred. After a hearing, the district judge denied the surety's motion in its entirety. This appeal ensued.

DISCUSSION
National asserts in its appeal that, under the provisions of LSA-R.S. 15:85(10), Reed's appearance in February 1994 served to relieve, fully and finally, the surety of any and all obligations under the bond. It thus contends that, because no valid bond existed at *588 the time of the second forfeiture on July 7, 1994, the state failed to present "proper evidence" in support of the judgment rendered at that time. We disagree.
Essentially, to address National's contentions, we must determine the continuing validity of its bond obligations as envisioned by LSA-R.S. 15:85(10). That provision, contained within a recent enactment[3] and pronouncing the effect that a defendant's appearance or surrender will have as to a judgment of forfeiture and the underlying surety contract, states:
Any judgment forfeiting the appearance bond rendered according to this Section shall at any time, within six months, after mailing of the notice of the signing of the judgment of bond forfeiture, be fully satisfied and set aside upon the surrender or the appearance of the defendant. The appearance of the defendant shall operate as a satisfaction of the judgment and the surrender shall operate as the satisfaction of the judgment and shall fully and finally relieve the surety of any and all obligations under the bond. Any judgment forfeiting the appearance bond rendered according to this Section shall at any time, within ten days after the expiration of the sixth month period provided to surrender the defendant, be fully satisfied by payment of the amount of the bail obligation without incurring any interest, costs, or fees.
In support of its position appellant reads the phrase "... and shall fully and finally relieve the surety of any and all obligations under the bond" to concern both the appearance and the surrender of a defendant. Thus, as National would have it, all future obligations of the surety dissolved when Reed arrived in court to plead not guilty on February 8, 1994.
Our reading of the provision, however, differs from National's. Further, finding the language of LSA-R.S. 15:85(10) to be unambiguous, we refuse to disregard the letter of the law under the pretext of pursuing its spirit. See LSA-R.S. 1:4. Plainly, under the first sentence of Paragraph 10, any forfeiture judgment shall be fully satisfied and automatically set aside if, within six months after the mailing of notice of that decree, the defendant makes an appearance or is surrendered. This sentence, however, does not mention the effect that these two latter events have upon the surety's obligation under the bond. Instead, that aspect is addressed in the next sentence.
Regarding the surety's continuing obligations under the bond, the second sentence of LSA-R.S. 15:85(10) clearly distinguishes between the effect of an appearance and that of a surrender. An appearance merely operates to satisfy the judgment, while a surrender both satisfies the judgment and, also, relieves the surety of any and all obligations under the bond. Assuredly, had such a distinction not been intended, the legislature would not have stated twice in the same sentence that each event brings forth "satisfaction of the judgment." Not surprisingly, National seeks to ignore this detail. Courts, of course, are required to give effect to all parts of a statute and not adopt constructions making any part superfluous, meaningless, or nugatory, if that result can be avoided. First National Bank of Boston v. Beckwith Machinery Co., 94-2065 (La. 02/20/95), 650 So.2d 1148.
National also points to that portion of LSA-C.Cr.P. Art. 6 stating that, unless the context of a provision clearly indicates otherwise, the word "and" between the last two "items" in a series applies to the entire series. It is thus argued that the phrase "... and shall fully and finally relieve the surety of any and all obligations under the bond" must refer to both appearance and surrender situations. As we read the second sentence of Paragraph 10, however, it does not present typical items in a series. Instead, observing that the word "and" appears between all of the "items" and that a lack of parallel structure surfaces upon reading the sentence as "items in a series," we conclude that the wording purposefully delineates a distinction between the effects of an appearance, on the one hand, and a surrender on the other. In *589 the face of that manifest intent, neither are we impressed with the absence of a comma between the two plainly separate segments of the sentence. Cf. State v. Anderson, 540 So.2d 974 (La.App.2d Cir.1989), writ denied, 544 So.2d 398 (La.1989). To view the provision otherwise would make the first sentence of the paragraph largely redundant.
Furthermore, our reading of the provision is consistent with the supreme court's holding, in State v. Wheeler, 508 So.2d 1384 (La.1987), that the two events, an appearance or a surrender, produce different consequences for the surety.[4] Had the drafters of the recent legislation sought to overrule that decision, they would have utilized very different language in formulating LSA-R.S. 15:85(10). Indeed, in the only departure that Paragraph 10 annunciates from the prior law, it is clearly indicated that the effects flowing from either an appearance or surrender now occur by operation of law, without any necessity for a motion or an order in that regard.
Applying our interpretation of LSA-R.S. 15:85(10) to the circumstances at hand, we conclude that Reed's presence in court in February 1994 served automatically to set aside the initial bond forfeiture judgment. Cf. State v. Tykocinski, 502 So.2d 1145 (La.App. 4th Cir.1987), writ denied, 503 So.2d 465 (La.1987). Absent a formal surrender, however, that appearance did not relieve National of its duty under the bond, viz., to assure the defendant's further appearance at the associated criminal proceedings. Accordingly, that continuing obligation afforded the basis and the "proper evidence" for the judgment rendered upon the state's request for a second forfeiture. As a result, the trial court did not err in rejecting appellant's motion seeking to nullify that decree and to be discharged and released from all responsibilities under the bond.

CONCLUSION
For the foregoing reasons, we affirm the decision of the district court denying the relief sought by National. All costs are assessed against appellant.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, HIGHTOWER, BROWN, WILLIAMS, and STEWART, JJ.
Rehearing denied.
NOTES
[1] An amended bill of information filed by the district attorney on February 8, 1994 charged Reed with the offense of unauthorized use of a movable having a value of $1000 or less, LSA-R.S. 14:68.
[2] The record and arguments suggest that Reed may have been hospitalized on the first scheduled date.
[3] By Act 834 of 1993, effective June 23, 1993, the Louisiana legislature revised LSA-R.S. 15:85 as part of an overall effort that broadly amended and reenacted the state's bail laws. Accordingly, in interpreting this recently adopted provision, we are faced with an issue of first impression.
[4] In Wheeler, concerning facts very similar to the present case, the court held that the appearance of the defendant after a judgment of bond forfeiture gave the surety the right to have that judgment set aside, but did not relieve it of any further obligations under the bond. To the contrary, only a proper surrender under the pertinent provisions of the Code of Criminal Procedure would act as a full release. See also State v. Posey, 550 So.2d 1368 (La.App. 5th Cir.1989), rev'd on other grounds, 556 So.2d 836 (La.1990).